```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| JEROME GOMEZ,<br><br>                      Petitioner,<br><br>      -against-<br><br>UNITED STATES OF AMERICA,<br><br>                      Respondent. | 20 Civ. 2445 (LAP)<br><br>16 Cr. 797 (LAP)<br><br>ORDER |

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is Petitioner Jerome Gomez's pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.[1]  The Government opposes the motion.  (See dkt. no. 140.)  For the reasons set out below, the motion is denied.

I.   Background

  a. The Indictment

On October 2, 2018, a grand jury charged Mr. Gomez and co-conspirators in a three-count superseding indictment.  (See dkt. no. 83.)  Count One charged Mr. Gomez with conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349.  (Id. ¶¶ 1-2.)  Count Two charged Mr. Gomez with bank fraud, in violation of 18 U.S.C. § 1344.  (Id. ¶ 3.)  Count Three charged the defendant with aggravated identity theft, in violation of 18 U.S.C. §§ 1028A and 2.  (Id. ¶ 4.)  Following the superseding

---

[1] (See dkt. no. 132.)  Unless otherwise specified, all docket entries in this order refer to the docket in 16 Cr. 797.

1

indictment, Mr. Gomez retained Kenneth Montgomery of The Law Office of Kenneth J. Montgomery PLLC to represent him in the criminal case. (Dkt. no. 89.)

      b. The Plea Agreement & Mr. Gomez's Guilty Plea

On November 13, 2018, Mr. Gomez pled guilty to all three counts under the terms of a Plea Agreement entered with the Government. (See dkt. no. 140, Ex. A.)[2] In the Plea Agreement, the parties stipulated that Mr. Gomez's sentencing range under the relevant sentencing guidelines ("U.S.S.G." or "Guidelines") was 87 to 108 months of imprisonment related to Counts One and Two, to be consecutive to a mandatory 24-month term on Count Three.[3] (Id. at 4.) Additionally, Mr. Gomez agreed to waive his right to a direct appeal and a collateral challenge if he received a sentence within or below the Stipulated Guidelines Range but maintained his right collaterally to attack his sentence on ineffective assistance of counsel grounds. (Id. at 5.)

Magistrate Judge Barbara Moses presided over the plea proceedings. (See dkt. no. 96.) In response to Magistrate

---

[2] In its opposition letter, the Government attached the unsigned Plea Agreement and has been unable to present the Court with the original signed version due to logistical challenges posed by the ongoing COVID-19 pandemic. (See dkt. no. 140 at 3.) Mr. Gomez has not challenged the accuracy of the unsigned version.
[3] This resulted in an adjusted sentencing range of 111 to 132 months imprisonment in total, within the "Stipulated Guidelines Range".

Judge Moses's questioning, Mr. Gomez answered that he himself had signed the Plea Agreement, read it before he signed it, and had discussed its contents with his lawyer. (Id. at 18:1-15.) Further, Mr. Gomez affirmed that he specifically understood that he was relinquishing certain appellate and collateral appeal rights so long as his impending sentence would be no longer than 132 months. (Id. at 20:1-7.) Judge Moses specified that by entering into the Plea Agreement, Mr. Gomez would "giv[e] up [his] right to challenge [his] sentence, whether by direct appeal, writ of habeas corpus, or otherwise." (Id. at 20:4-6.) Judge Moses also explained that under the terms of the Plea Agreement, neither Mr. Gomez nor the Government could "argue to the sentencing judge for a [Guidelines] calculation which is different from the one" to which the parties stipulated. (Id. at 19:15-19.) Following Mr. Gomez's affirmation that he understood the sentencing framework and the nature of the proceedings against him, (see id. at 19:7-21:24), Judge Moses recommended that the Court accept Mr. Gomez's guilty plea, (see id. at 27:5-14). The Court later accepted Mr. Gomez's guilty plea on or about November 19, 2018. (See dkt. no. 98.)

    c. Sentencing

Consistent with the parties' Plea Agreement, the Probation Office prepared and docketed a Presentence Investigation Report ("PSR") on February 4. 2019. (See dkt. no. 105.) Based on Mr.

3

Gomez's criminal history, the PSR attached a criminal history category of III and an adjusted offense level of 27. (See id. ¶¶ 40, 54.) Due to Mr. Gomez's causing a loss to victim banks greater than $3.5 million and less than $9.5 million, 18 points were added to a Base Offense Level of 7. (See id. ¶¶ 30-31.) Further, two points were added because the relevant offenses involved more than 10 victims.[4] (Id. ¶ 32.) The calculations in the PSR were ultimately the same as those contained in the Plea Agreement. (See dkt. no. 140, Ex. A., at 4.) Thus, at sentencing, the Court adopted those calculations. (See dkt. no. 115.)

On February 25 2019, the Court held a sentencing hearing after receiving written submissions from the Government, (see dkt. no. 108), and Mr. Gomez's counsel, (see dkt. nos. 106, 107 and 109). Mr. Gomez's counsel, Mr. Montgomery, filed a 16-page submission on behalf of his client, including many letters of support and an inmate work performance evaluation. (See dkt. nos. 106, 107.) Mr. Montgomery also asked the Court to impose a sentence substantially below the Guidelines range. (Dkt. no. 106 at 4-5.) The Court imposed a total sentence of 98 months,

---

[4] The PSR also calculated a three-point level increase in the offense level because Mr. Gomez was a manager or supervisor in a criminal activity involving five or more participants. See U.S.S.G. § 3B1.1(b). Because the defendant accepted responsibility for his unlawful activities, he received a three-point deduction. (See dkt. no. 140.)

4

including 74 months for Counts One and Two, to be consecutive to a mandatory term of 24 months on Count Three.  (See dkt. no. 115 at 18:9-12.)  Mr. Gomez did not directly appeal his conviction or term of imprisonment.  However, he did file a pro se letter motion asking for a sentence reduction or a compassionate release, (see dkt. no. 124), which his counsel later supplemented, (see dkt. no. 127.)  The Court denied the motion on February 18, 2020.  (See dkt. no. 130.)

       d. Motion to Vacate

On March 18, 2020, Mr. Gomez filed the instant pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  (See dkt. no. 132.)  Mr. Gomez argues that his counsel, Mr. Montgomery, was constitutionally ineffective because he failed to object to his sentencing enhancements by not "fil[ing] a proper Sentencing Memorandum or plac[ing] on the record a proper objection to the Guideline enhancement."  (See dkt. nos. 132 at 5.)  Mr. Gomez specifically takes issue with his counsel's lack of objection to the following sentencing provisions: U.S.S.G. §§ 2B1.1(a)(1); 2B1.1(b)(1)(J); 2B1.1(b)(2)(A)(i); 3B1.1(b) and 18 U.S.C § 1028A.  (See id. at 5-9.)  Though Mr. Gomez lists five separate grounds for his

motion,[5] each allegedly independent claim repeats an ineffective assistance of counsel argument on the same bases described herein.  Liberally construed, however, Mr. Gomez's motion can be understood to make two separate sets of claims: one alleging ineffective assistance of counsel and another directly challenging the application of each sentencing enhancement.

II. Legal Standard

a. The Habeas Statute and Waiver

Under 28 U.S.C. § 2255, a federal prisoner "may move the court which imposed the sentence to vacate, set aside, or correct the sentence" on the grounds, inter alia, that the "sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).

In general, however, collateral and appellate waivers such as the one found in the Plea Agreement are presumptively enforceable.[6]  As the Court of Appeals noted in Sanford, limited

---

[5] Ground one in petitioner's motion is the only ground labeled "Ineffective Assistance of Counsel", while grounds two through five attack the terms of his sentence on the basis that his counsel failed to object to the application of the various enhancements.  (See dkt. no. 132 at 5-6; 8-9; 13.)
[6] See Sanford v. United States, 841 F.3d 578, 580 (2d Cir. 2016) ("A defendant's knowing and voluntary waiver of the right to appeal or collaterally attack his conviction and/or sentence is enforceable."); see also United States v. Arevalo, 628 F.3d 93,
(continued from previous page)

(continued on following page)

exceptions to the presumption of enforceability of appellate and collateral waivers exist, including 1) an involuntary or unknowing waiver, 2) when a judge imposes a sentence based on constitutionally impermissible factors, 3) when the Government breaches a plea agreement, and 4) when the sentencing court fails to describe any rationale for a defendant's sentence. Sanford, 841 F.3d at 580.

The Court of Appeals routinely enforces waivers of the right to appeal or collaterally attack a sentence for sentences at or below an agreed Guidelines range. See, e.g., United States v. Lee, 523 F.3d 104, 106 (2d. Cir. 2008); United States v. Roque, 421 F.3d 118, 121-24 (2d Cir. 2005.)  Nevertheless, waivers may be set aside where "the defendant is challenging the constitutionality of the process by which he waived those rights," including when "the defendant claims that the plea agreement was entered into without effective assistance of counsel." United states v. Hernandez, 242 F.3d 110, 113-14 (2d Cir. 2001.)

---

98 (footnote continued)(2d Cir. 2010) ("Knowing and voluntary appellate waivers included in plea agreements must be enforced because, if they
are not, the covenant not to appeal becomes meaningless and would cease to have value as a bargaining chip in the hands of defendants.").

b. <u>Ineffective Assistance of Counsel</u>

A criminal defendant has a Sixth Amendment right "to effective assistance from his attorney at all critical stages in the proceedings." <u>Gonzalez v. United States</u>, 722 F.3d 118, 130 (2d Cir. 2013). To establish a claim for ineffective assistance of counsel, a petitioner must show two elements. <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). First, a petitioner must show that the attorney's work did not meet "an objective standard of reasonableness" under "prevailing professional norms." <u>See</u> <u>id.</u> at 688. Second, prejudice must be established because of the allegedly deficient representation. <u>See</u> <u>id.</u> at 692. That test is conjunctive.

To determine whether a petitioner has satisfied <u>Strickland</u>'s first prong, a court considers counsel's "duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process" and that counsel has discretion in making "tactical decisions." <u>Id.</u> at 688-89. Thus, the Court should "reconstruct the circumstances of counsel's challenged conduct, and [] evaluate the conduct from counsel's perspective at the time," while "indulg[ing] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Id.</u> at 689. Accordingly, "strategic choices made after thorough

8

investigation of law and facts relevant to plausible options are virtually unchallengeable." Id. at 690.

Meeting Strickland's second prong requires "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. When petitioner's claims relate to ineffective assistance at sentencing, he must show that, but for counsel's performance, "he would have received a less severe sentence." Gonzalez, 722 F.3d at 130.

### III. Discussion

#### a. Waiver

The Court begins by considering whether Mr. Gomez's collateral-review waiver bars parts of, or all, his claims. As noted, parts of Gomez's motion can be understood as attacking the substance of his sentence. Without question, however, Mr. Gomez's plea agreement forecloses any substantive challenge to his sentence. As detailed in the record, Mr. Gomez demonstrated a clear understanding that he was relinquishing any right to challenge the substantive terms of his sentence if he received a prison term at or below 132 months. Mr. Gomez received a total sentence of 98 months. Thus, the waiver contained in the plea agreement bars Mr. Gomez's substantive challenges.

Nevertheless, the motion also alleges that Mr. Montgomery made errors at sentencing rather than during the plea-bargaining

process, which his motion does not mention. These alleged deficiencies include a failure to object to his sentencing enhancements (to U.S.S.G. §§ 2B1.1(a)(1); 2B1.1(b)(1)(J); 2B1.1(b)(2)(A)(i); 3B1.1(b) and 18 U.S.C. §1028A) and a supposed "failure" to file a proper sentencing memorandum. (See dkt. No. 132 at 5-9.)

Although the Plea Agreement reserves Mr. Gomez's right to ineffective assistance of counsel claims on collateral review, (see dkt. no. 40), the Court of Appeals and district courts within this Circuit have drawn a clear distinction between ineffective assistance claims focused on the pleading versus sentencing stages of criminal proceedings.[7] In effect, an ineffective assistance of counsel motion which claims that counsel should have made different arguments or strategic decisions at sentencing is a disguised attack on the sentence itself for which waiver should apply. See United States v. Williams, 448 F. App'x 156, 157 (2d Cir. 2012) (summary order) (explaining that a defendant cannot "do an end-run around his

---

[7] See United States v. Djelevic, 161 F.3d 104, 107 (2d Cir. 1998) (rejecting the proposition that "waiver should not bar consideration of [an] appeal because counsel was ineffective not at the time of the plea, but at sentencing."); see also Cannonier v. United States, No. 15-CR-95 (AJN) & No. 18-cv-8764 (AJN), 2021 WL 809343, at *3 (S.D.N.Y. Mar. 3, 2021) (applying waiver to bar a § 2555 ineffective assistance claim centered on counsel's actions at sentencing).

10

plea agreement[] on the ground of ineffective assistance" at sentencing).

Mr. Gomez's petition demonstrates that he is attacking the sentence itself through his ineffective assistance of counsel claim. For example, each ground on which he objects states "but for counsel's failure to either file a proper Sentencing Memorandum or place on the record a proper objection to the Guideline enhancement; Petitioner's sentence would not be . . . substantively unreasonable." (Dkt. no. 132 at 5-6, 8, 13.) That language betrays the true nature of Mr. Gomez's claims, which "are best understood as targeting the sentence that the Court imposed" rather than his counsel's performance.[8] Enabling Mr. Gomez's ineffective assistance claim to circumvent his waiver, therefore, would be "inconsistent with the Second Circuit's admonition that courts not permit criminal defendants to circumvent appellate and collateral waivers." Cannonier, 2021 WL 809343, at *4.

Furthermore, Mr. Gomez's motion does not rebut the presumption of enforceability established in Sanford. The

---

[8] Cannonier, 2021 WL 809343, at *3; see also United States v. Marte, 798 F. Supp. 2d 511, 515 (S.D.N.Y. 2011) ("[The petitioner's] claim of ineffective assistance of counsel appears to be a backdoor attempt to attack his sentence."); see also United States v. Brickhouse, No. 09-CR-1118 (KMK), 2017 WL 1049509, at *6 (S.D.N.Y. Mar. 16, 2017) ("[T]o the extent that Petitioner quibbles with counsel's advocacy at sentencing, his claim is covered by the waiver in the Plea Agreement.").

record clearly demonstrates that he knowingly and voluntarily entered into the Plea Agreement and understood its consequences. (See dkt. no. 96 at 18-20.)  Mr. Gomez also does not allege that the Government has breached its agreement or that the Court's imposition of his sentence is based on an impermissible constitutional ground or is irrationally based.  For these reasons, the waiver contained in the Plea Agreement applies to Mr. Gomez's entire motion, which is therefore barred.

      b. Merits

Acknowledging that Mr. Gomez is proceeding pro se, the Court notes that even if waiver did not apply to his ineffective assistance of counsel claims, they are meritless in any event. First, the record contradicts Mr. Gomez's contention that his counsel failed to file a proper sentencing memorandum because it includes multiple detailed filings to the Court from Mr. Montgomery of letters of support and a request for a sentence at variance from the Guidelines.  (See dkt. nos. 106, 107 and 109.) Moreover, as the Government details in its opposition letter (see dkt. no. 140), any of counsel's objections to sentencing enhancements would be meritless based on the strong evidence presented in the PSR and the mandatory nature of 18 U.S.C. § 1028A(a)(1).  Any objection to these enhancements would have been in direct violation of the Plea Agreement that Mr. Gomez entered with the Government. (See dkt. no. 140, Ex. A, at 4.)

Because Mr. Montgomery had no reasonable basis to object to these enhancements at sentencing, Mr. Gomez's counsel clearly acted in accordance with "an objective standard of reasonableness". Strickland, U.S. 466 at 688. And because Mr. Montgomery acted reasonably, Mr. Gomez cannot show that he was prejudiced in any way by his counsel's "failure" to object. Thus, Mr. Gomez has failed to meet both prongs of the Strickland test. See Strickland, U.S. 466 at 688, 694.

IV. Conclusion

For the reasons set out above, Defendant's pro se § 2255 petition [dkt. no. 132; dkt. no. 1 in 20-CV-2445] is denied. Because Mr. Gomez has not made a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. See 28 U.S.C. § 2253(c). The Court certifies that any appeal from this Order would not be taken in good faith. See 28 U.S.C. § 1915(a)(3); Coppedge v. United States, 369 U.S. 438, 444-45 (1962). The Clerk of the Court shall (1) close case number 20-CV-2445 and (2) mail a copy of this order to Mr. Gomez.

**SO ORDERED.**

Dated:   New York, New York
         November 3, 2021

_____
LORETTA A. PRESKA
Senior United States District Judge